UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

Sensient Technologies Corporation,

    Plaintiff,

vs.

Marco Antonio Montero,

    Defendant.

Case No:

Jury Trial Demanded

# COMPLAINT

Plaintiff, Sensient Technologies Corporation ("Sensient"), by its attorneys, Hansen Reynolds LLC, files its complaint against Defendant Marco Antonio Montero ("Montero"). In support of its claims, Sensient alleges as follows:

## PARTIES

1. Sensient is a global manufacturer and marketer of colors, flavors, and other specialty ingredients headquartered in Milwaukee, Wisconsin. It has locations worldwide and employs approximately 4,000 individuals globally.

2. Sensient is incorporated in Wisconsin and its principal place of business is located at 777 E. Wisconsin Avenue, Milwaukee, Wisconsin, 53202.

3. Montero is a citizen of Mexico who resides at Paseo de la Reforma No. 87 Office 102 and 103, Colonia Tabacalera, Cuauhtémoc Mayor's Office, C.P. 06030, in Mexico City, Mexico.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §1332(a), because the amount in controversy exceeds $75,000 and parties are diverse from each other.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events, acts, omissions, practices, and courses of business that give rise to Sensient's claims occurred within the jurisdiction of the United States District Court for the Eastern District of Wisconsin, Milwaukee Division, and because Sensient is suffering injuries in the Eastern District of Wisconsin as a result of Montero's actions in Mexico.

## FACTUAL ALLEGATIONS

6. Sensient is a global leader in the market for colors, flavors, and extracts used in many consumer products.

7. Sensient is comprised of three primary operating units: the Color Group, the Flavors & Extracts Group, and the Asia Pacific Group.

8. Montero is a former employee of Sensient who worked in its Flavors & Extracts Group in Mexico, Sensient Flavors S.A.C.D.

9. Montero was employed as an executive-level employee, and his base salary was equivalent to approximately $200,000 annually.

10. In 2017, Montero voluntarily traveled from Mexico to Milwaukee, Wisconsin.

11. While in Wisconsin, Montero visited Sensient's office in Milwaukee, Wisconsin, to attend a meeting with and make a business presentation to other members of Sensient's Flavors & Extracts Group.

12. Montero knew this presentation would directly impact his annual bonus under Sensient's Global Management Incentive Plan.

13. At the time Montero visited Sensient's offices in Milwaukee, Sensient was disappointed by the financial results of its Flavors & Extracts Group.

14. Montero's presentation, and his personal performance during his presentation, were disappointing to the leadership of Sensient's Flavors & Extracts Group.

15. As a result of Montero's personal presentation and performance, Sensient determined that Montero's annual bonus would be reduced significantly.

16. Even prior to Montero's visit to Sensient in Milwaukee, Sensient's US-based executives visited Montero in Mexico, where Montero also personally delivered subpar and disorganized results. Thus, Montero was on notice that his future visit to Milwaukee had significant personal importance.

17. Based on the poor results of Sensient's Flavors & Extracts Group, Sensient decided to terminate Montero's employment.

18. On April 5, 2017, at a meeting at the Hyatt Hotel in Celaya, Guanajuato, Mexico, representatives of Sensient told Montero that his employment with Sensient would be terminated.

19. Sensient attempted to resolve Montero's separation amicably.

20. Sensient offered Montero payment of the full amount of severance benefits he would be entitled to receive under Mexican law.

21. Sensient's offer to Montero consisted of a payment representing three months of his annual salary plus twenty days per year of service, a seniority bonus, and payment of the value of his accrued employment benefits.

22. Sensient made its offer to Montero without acknowledging or admitting any fault or responsibility for the circumstances leading to the end of Montero's employment with Sensient.

23. Montero did not accept Sensient's offer.

24. Montero proposed that his severance payment would include his unearned annual bonus as part of his severance payment, that the amount of his unearned bonus would be added to the amount of his salary so that the amount of his severance payments would increase, that he would obtain ownership of the Sensient-leased vehicle that was a direct personal benefit during his employment, and that he would maintain the medical insurance coverage benefits that he had enjoyed during his employment.

25. Sensient did not accept Montero's counterproposal.

26. Montero then fled the meeting before it concluded. He stormed out of Sensient's office, hopped into the company vehicle, and sped away.

27. Montero's decision to flee the meeting was as calculated as it was dramatic. It was the first step in his plan to enrich himself by using Mexico's employee-friendly laws against Sensient and the Mexican public, and to cause financial harm to Sensient by dragging it into an abusive – and deliberately prolonged – litigation process in Mexico in response to Sensient's intent to end his employment with Sensient.

28. Montero subsequently filed a case against Sensient in a labor court in Mexico, falsely alleging that he was wrongfully dismissed by Sensient without cause, thereby attempting to transform a proper, for-cause termination into something wrongful.

29. Mexico does not adhere to the American concept of at-will employment, under which an employee can be dismissed for no reason without the payment of severance benefits.

30. Instead, Mexican law recognizes an indefinite employment relationship between

employers and employees in furtherance of the concept known as "work stability," which attempts to protect employees from economic hardships that can result from the termination of employment.

31. Under Mexican law, in the absence of an agreement between an employer and an employee regarding the terms of the employee's termination, the separation of the employee could be considered a "dismissal" and severance benefits would be owed to the employee.

32. If a termination is determined to be without justification or wrongful, the employee is entitled to additional severance benefits above those owed to employees who are simply dismissed.

33. Under Mexican law, a dismissed employee may seek reinstatement to his prior employment when that is the principal form of relief the employe seeks, when the employee genuinely seeks to return to his former position, and when the employee has been unable to find equivalent employment.

34. An action seeking reinstatement is not to be used to generate a double recovery for a former employee or to obtain additional income for a former employee who has since become gainfully re-employed.

35. Under Mexican law, in litigation arising out of a dismissal, unpaid back wages are available to the employee as a remedy to compensate the employee for the wages that otherwise would not have been paid to the employee during the period between his dismissal and the successful resolution of his claim for reinstatement.

36. In addition, the dismissed employee may receive public subsistence payments during the time the employee is challenging that dismissal.

37. In or about September 2019, Montero became employed as a general manager of a

company in Mexico named Gluten y Almidones Industriales, S.A. de C.V., ("Gluten").

38. Because Montero had become gainfully employed with Gluten after his dismissal from Sensient, he is not eligible for reinstatement with Sensient, and he became ineligible to receive unpaid back wages or public subsistence payments.

39. The net effect of Montero's efforts was to vastly and wrongfully increase the judgment Montero ultimately receives, the full costs of which has and will ultimately impact Sensient at the corporate level in Milwaukee.

40. Based on the interactions between Sensient and Montero on April 5, 2017, Montero knew that there was no factual basis for him to claim that he had been dismissed, with or without cause, at the time he filed his case against Sensient.

41. In Montero's case against Sensient in Mexico, Montero seeks the following forms of relief: (1) reinstatement; (2) unpaid back wages; (3) an award of severance payments that exceeds the maximum value of the severance payments that Montero could receive under Mexican law if his termination was found to be wrongful; and (4) unemployment subsistence payments.

42. In his case against Sensient in Mexico, Montero falsely alleges that he was wrongfully terminated by Sensient without cause. Further, Montero falsely claims that his termination occurred at a meeting that he claims occurred on April 6, 2017 at Sensient's office in Mexico.

43. No such meeting occurred on April 6, 2017 at Sensient's offices or anywhere else. Such a meeting could not have occurred at Sensient's offices in Mexico, because Montero was not present at Sensient's offices on that date.

44. Montero's false allegation is designed to allow him to claim that he was dismissed at his workplace at Sensient's offices in Mexico, to bolster his claim that Sensient wrongfully

terminated his employment.

45. In his case against Sensient in Mexico, Montero intentionally sought to use the protections granted to employees under Mexican law against Sensient in order to obtain financial benefits to which he was not entitled and that exceed the maximum amount of benefits that he could recover if Sensient's termination was found to be wrongful.

46. The court in Mexico initially denied his claim for public subsistence payments.

47. That court reversed its initial decision and granted public subsistence payments to Montero, despite the fact that he has been continuously employed by Gluten for over five years and there is no need-based justification to award him such payments.

48. The Mexican court did not provide any written explanation for its decision to award Montero public subsistence payments.

49. For years, the labor courts in Mexico have been plagued by corruption, bribery, and influence-peddling, which prevented employers like Sensient from presenting adequate defenses and resulted in employees obtaining awards that have no basis in the relevant facts or law. Legislative reforms passed in 2019 were designed in part to correct these abuses and require that the decisions of the labor courts conform to Mexican law. Indeed, the very tribunal in which Montero has been wrongfully pursuing his claims against Sensient has been abolished for its corrupt practices; Sensient unfortunately has been "grandfathered" into this broken system.

50. Montero initiated and has been maintaining his case against Sensient in Mexico for improper purposes unrelated to the former employment relationship between Sensient and Montero: to obtain money and benefits that he is not entitled to under Mexican law and to cause financial harm to Sensient.

51. Montero, assisted by his lawyers in Mexico, has intentionally and unreasonably

prolonged the litigation with Sensient in Mexico with the willful and malicious intent to harm Sensient by forcing it to incur excessive attorney's fees to defend itself against Montero's baseless claims, in addition to the massive, unlawful award he already has received.

52. With no legitimate purpose, Montero has deliberately sought the Mexican court to delay hearings and obstruct proceedings to inflate the amount of money he believes that he could force Sensient to pay him in order to end the litigation.

53. The litigation between Montero and Sensient continues to be pending in the Mexican court.

54. Sensient continues to incur attorney's fees to defend itself against Montero's claims in the Mexican court.

55. Separately, a criminal complaint was filed against Montero in Mexico, alleging that he is maliciously seeking public subsistence payments while knowing that he is not eligible for those payments because he has been employed by Gluten for over five years.

56. In the criminal action against Montero, the public prosecutor has: (1) directed Gluten to provide Montero's employment file, including Montero's employment agreement and information Gluten provided to the Mexican Social Security Institute related to Montero, to obtain evidence that Montero has been paid a salary and/or other income by Gluten; and (2) directed the Mexican Social Security Institute to provide the file maintained by that agency related to Montero's employment with Gluten.

57. The criminal action against Montero, and Montero's case against Sensient, both remain pending in the Mexican courts.

## COUNT I – ABUSE OF PROCESS

58. Sensient re-states and re-alleges the preceding paragraphs.

59. Montero initiated legal proceedings in Mexico and has maintained his case there for improper purposes, including to extort, intimidate, and embarrass Sensient, in an attempt to recover severance payments from Sensient that he knows he is not entitled to receive because they are not available to him – or anyone else – under Mexican law.

60. Montero's allegation in the Mexican courts that he seeks reinstatement with Sensient is an improper attempt to prolong his case against Sensient and exert improper pressure on Sensient to pay him money to which he is not entitled, because he has been gainfully employed by Gluten for over five years and has no interest in returning to his position with Sensient.

61. Montero has improperly used the Mexican court's legal processes to extend the duration of his case against Sensient for no legitimate purpose in order to harm Sensient by forcing it to incur excessive and unnecessary legal fees and expenses.

62. Montero has used the Mexican court's legal processes in an attempt to compel Sensient to pay him severance benefits that Sensient could not be compelled to pay him, because the benefits Montero seeks from Sensient are not available to him under Mexican law.

63. Sensient has been damaged by Montero's abuses of process in the courts of Mexico in an amount exceeding $75,000, as a result of the legal fees, costs, and expenses Sensient has been forced to incur as a direct result of Montero's improper actions.

WHEREFORE, Sensient respectfully requests that this Court grant judgment in its favor against Montero for abuse of process and award Sensient damages to compensate it for the attorney's fees, costs, and related expenses that Sensient has been forced to incur as a result of Montero's abuse of process in the courts of Mexico, together with punitive damages and all other forms of relief that the Court finds proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Sensient demands a jury trial.

November 20, 2025.                    Respectfully submitted,

                                        **HANSEN REYNOLDS, LLC**

                                By: s/ *James F. Cirincione*
                                        James F. Cirincione
                                        Timothy M. Hansen
                                        301 N Broadway, Suite 400
                                        Milwaukee, Wisconsin 53202
                                        jcirincione@hansenreynolds.com
                                        thansen@hansenreynolds.com
                                        Tel: (414) 455-7676
                                        Fax: (414) 273-8476

                                        *Attorneys for Plaintiff*